1 BENJAMIN P. LECHMAN
California State Bar Number 185729
2 964 Fifth Ave. #320
San Diego, California 92101-5008
3 Telephone: (619) 699-5935

4
Attorney for Defendant Hernandez-Contreras
5

6

7
UNITED STATES DISTRICT COURT
8
SOUTHERN DISTRICT OF CALIFORNIA
9
(HONORABLE WILLIAM Q. HAYES)
10

| UNITED STATES OF AMERICA, | ) | CASE NO. 07CR3103-WQH |
|---|---|---|
| Plaintiff, | ) ) | DATE: January 2, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | |
| | ) | NOTICE OF MOTIONS AND MOTIONS TO: |
| GABRIEL ANGEL | ) | |
|     HERNANDEZ-CONTRERAS | ) | (1) COMPEL FURTHER DISCOVERY; |
|     aka Antonio Reza-Lara, | ) | (2) DISMISS INDICTMENT FOR FAILURE |
| | ) |     TO PLEAD ELEMENT; |
| | ) | (3) ELECT DEPORTATION DATE; and |
| | ) | (4) LEAVE TO FILE FURTHER MOTIONS |
| Defendant. | ) | |

18  TO: KAREN HEWITT, UNITED STATES ATTORNEY, AND
     DAVID LESHNER, ASSISTANT UNITED STATES ATTORNEY:

**PLEASE TAKE NOTICE** that on January 2, 2008, at 2:00 p.m., or as soon thereafter as counsel may be heard, the defendant, Gabriel Angel Hernandez-Contreras, by and through his attorney Benjamin P. Lechman, will ask this Court to issue an order granting the motions listed below.

//
//
//
//
//
//

1                                                                                           07CR3103-WQH

# MOTIONS

The defendant, Mr. Hernandez-Contreras, by and through his attorney, Benjamin P. Lechman, asks this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes and local rules for an order to:

1. Compel further discovery;
2. Dismiss Indictment for Failure to Plead Element;
3. Elect Deportation date; and
4. Leave to file further motions.

These motions are based upon the instant motions and notice of motions, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may come to this Court's attention prior to or during the hearing of these motions.

Respectfully submitted,

Dated: December 4, 2007        **BENJAMIN P. LECHMAN**
                               Attorney for Defendant Hernandez-Contreras

BENJAMIN P. LECHMAN
California State Bar Number 185729
964 Fifth Ave. #320
San Diego, California  92101-5008
Telephone:  (619) 699-5935

Attorney for Defendant Hernandez-Contreras

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE WILLIAM Q. HAYES)

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 07CR3103-WQH |
| Plaintiff, | DATE:   January 2, 2008 |
| | TIME:    2:00 p.m. |
| v. | |
| | STATEMENT OF FACTS AND POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |
| GABRIEL ANGEL HERNANDEZ-CONTRERAS   aka Antonio Reza-Lara, | |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**

Mr. Hernandez-Contreras hereby incorporates the statement of facts based on the criminal complaint filed by the government in this case charging a violation of 8 U.S.C. section 1326.  However, Mr. Hernandez-Contreras does not accept this statement of facts as his own, and reserves the right to take a contrary position at motions hearing and trial.  The facts alleged in these motions are subject to amplification and/or modification at the time these motions are heard.

**II.**

**MOTION TO COMPEL DISCOVERY**

Mr. Hernandez-Contreras moves for the production by the government of the following

1                                                                                          07CR3103-WQH

1  discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all
2  discovery listed below that is in the custody, control, care, or knowledge of any government agency. See
3  generally Kyles v. Whitley, ___ U.S. ___, 115 S. Ct. 1555, 1567-68 (1995); United States v. Lacy, 896 F.
4  Supp. 982 (N.D. Cal. 1995) (prosecutor has duty to ascertain what exculpatory information may be
5  possessed by other agencies):

6      (1) The Defendant's Statements  Under Fed. R. Crim. P. 16 (a)(1)(A) the defendant is entitled to
7  disclosure of all copies of any written or recorded statements made by the defendant; the substance of
8  any statements made by the defendant which the government intends to offer in evidence at trial; any
9  recorded testimony of the defendant before the grand jury; any response by the defendant to
10 interrogation; the substance of any oral statements which the government intends to introduce at trial,
11 and any written summaries of the defendant's oral statements contained in the handwritten notes of the
12 government agent; any response to any Miranda warnings which may have been given to the defendant
13 (See United States v. McElroy, 697 F.2d 459 (2d Cir. 1982)); and any other statements by the defendant
14 that are discoverable under Fed. R. Crim. P. 16(a)(1)(A);

15     (2) Arrest Reports, Notes and Dispatch Tapes  The defendant also specifically requests that all
16 arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding his
17 arrest or any questioning, if such reports have not already been produced in their entirety, be turned over
18 to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other
19 documents in which statements of the defendant or any other discoverable material is contained. This is
20 all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). See
21 also United States v. Johnson, 525 F.2d 999 (2d Cir. 1975); United States v. Lewis, 511 F.2d 798 (D.C.
22 Cir. 1975); United States v. Pilnick, 267 F. Supp. 791 (S.D.N.Y. 1967); Loux v. United States, 389 F.2d
23 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes,
24 sworn statements, and prosecution reports pertaining to the defendant are available under Fed. R. Crim.
25 P. 16(a)(1)(B) and ©, Fed. R. Crim. P. 26.2 and 12(i). **Preservation of rough notes is requested,**
26 **whether or not the government deems them discoverable at this time**;

27     (3) Brady Material  The defendant requests all documents, statements, agents' reports, and
28 tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of

the government's case. Impeachment as well as exculpatory evidence falls within <u>Brady's</u> definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976);

(4) <u>Any Information That May result in a Lower Sentence Under The Guidelines</u> As discussed above, this information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83(1963). This request includes any cooperation or attempted cooperation by the defendant, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. Also included in this request is any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, or any other application of the Guidelines;

(5) <u>The Defendant's Prior Record</u> Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B). Counsel specifically requests a complete copy of any criminal record as well as any record of prior deportations;

(6) <u>Any Proposed 404(b) Evidence</u> Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)© and Fed. R. Evid. 404(b) and 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial;

(7) <u>Evidence Seized</u> Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)©;

(8) <u>Request for Preservation of Evidence</u> The defendant specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved.

It is requested that the government be ordered to <u>question</u> all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist to inform those parties to preserve any such evidence;

(9) <u>Tangible Objects</u> The defendant requests, under Fed. R. Crim. P. 16(a)(2)© the opportunity to

inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, photographs of buildings or places or copies of portions thereof which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant;

(10) <u>Evidence of Bias or Motive to Lie</u> The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or her testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988);

(11) <u>Impeachment evidence</u> The defendant requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. <u>See</u> Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under <u>Brady v. Maryland</u>, supra. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility);

(12) <u>Evidence of Criminal Investigation of Any Government Witness</u> The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir.), <u>cert. denied</u>, 474 U.S. 945 (1985);

(13) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u> The defense requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980);

(14) <u>Witness Addresses</u> The defendant requests the name and last known address of each prospective government witness. <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. (1979) (defense has equal right to talk to witnesses). The defendant also requests the name and last known address of every witness to the

1 crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be
2 called as a government witness.  <u>United States v. Cadet</u>, 727 F.2d, 1453 (9th Cir. 1984);

3          (15) <u>Name of Witnesses Favorable to the Defendant</u>  The defendant requests the name of any
4 witness who made an arguably favorable statement concerning the defendant or who could not identify
5 him or who was unsure of his identity, or participation in the crime charged.  <u>Jackson v. Wainwright</u>,
6 390 F.2d 288 (5th Cir. 1968); <u>Chavis v. North Carolina</u>, 637 F.2d 213, 223 (4th Cir. 1980); <u>Jones v.
7 Jago</u>, 575 F.2d 1164, 1168 (6th Cir.), <u>cert. denied</u>, 439 U.S. 883 (1978); <u>Hudson v. Blackburn</u>, 601 F.2d
8 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086 (1980);

9          (16) <u>Statements Relevant to the Defense</u> The defendant requests disclosure of any statement that
10 may be "relevant to any possible defense or contention" that he might assert.  <u>United States v. Bailleaux</u>,
11 685 F.2d 1105 (9th Cir. 1982);

12          (17) <u>Jencks Act Material</u> The defense requests all material to which Defendant is entitled
13 pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial, including dispatch tapes.  A
14 verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is
15 sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v. United States</u>,
16 373 U.S. 487, 490-92 (1963);

17          (18) <u>Defendant's "A" File</u> The defendant requests his Immigration and Naturalization Service "A"
18 file # A71 632 137;

19          (19) <u>The Record of any Deportation Hearing</u> The defendant requests all records, tapes and
20 transcripts, including and not limited to the tapes from all alleged deportations; and from any and all
21 administrative hearings relating to any and all alleged orders of deportation pertaining to him; and

22          (20) <u>Giglio Information</u> Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant
23 requests all statements and/or promises express or implied made to any government witnesses, in
24 exchange for their testimony in this case, and all other information which could arguably be used for the
25 impeachment of any government witnesses.

26
27 //
28 //

**III.**

**MOTION TO DISMISS FOR FAILURE TO PLEAD ELEMENT OF DEPORTATION DATE**

The indictment must be dismissed because the government has failed to properly allege all elements of the offense. The Fifth Amendment requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .." Consistent with this Constitutional requirement, the Supreme Court has held that an indictment must "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Carll, 105 U.S. 611, 612-13 (1881) (emphasis added). It is black letter law that an indictment that does not allege an element of an offense, even an implied element, is defective, and should be dismissed. See, e.g., Russell v. United States, 369 U.S. 749, 769-72 (1962); Stirone v. United States, 361 U.S. 212, 218-19 (1960); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979).

The indictment in this case alleges that Mr. Hernandez-Contreras "was removed from the United States subsequent to October 14, 2003." However, this generalized assertion, without more, is insufficient to trigger the increased statutory maximums under section 1326(b). A recent Ninth Circuit case is illustrative. In United States v. Salazar-Lopez, – F.3d –, 2007 WL 3085906 (9th Cir. 2007), the Ninth Circuit definitively held that the government must allege in a 1326 indictment that the defendant "had been removed on a specific, post-conviction date. Id. at *3. In this case, the indictment fails to offer an actual date of removal. This is fatal for two reasons. First, the failure to plead the date is not in accord with the law of Salazar-Lopez.

Additionally, the failure to plead an exact date, does not provide adequate notice for a defendant to prepare his defense to the 1326 charge. As the Ninth Circuit observed in Salazar-Lopez, there might be more than one deportation at issue in a 1326 trial. Cf. Salazar-Lopez, at *3. Thus, it may be impossible for the defendant to know exactly against *which* deportation he is to defend. The particular facts of a specific deportation are material and are fundamental to a § 1326 prosecution. Swapping the factual details of the element of a deportation amounts to a constructive amendment to the indictment. See e.g., United States v. Stirone, 361 U.S. 212 (1960) (when a defendant is tried on proof that was not presented to the grand jury, the defendant's constitutional right to a trial only on charges presented to a

1 grand jury is violated); United States v. Du Bo, 186 F.3d 1177 (9th Cir. 1999).

2      In Howard v. Dagget, 526 F.2d 1388 (9th Cir.1975), the Ninth Circuit found a constructive
3 amendment where the indictment charged the defendant with inducing two named women to engage in
4 prostitution, but evidence and instructions allowed the jury to convict the defendant of inducing women
5 neither named nor mentioned in the indictment. The Dagget court reversed the defendant's conviction
6 because to allow the jury "to consider the evidence respecting the other alleged prostitutes was to allow
7 the jury to convict of a charge not brought by the grand jury" which destroyed the defendant's
8 "substantial right to be tried only on charges presented in an indictment returned by a grand jury" as
9 articulated in Stirone. Id. at 1390 (citation omitted).

## IV

**THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE THAT MR. HERNANDEZ-CONTRERAS KNEW HE WAS AN ALIEN, WHICH IS AN ESSENTIAL ELEMENT OF THE CRIME OF BEING "FOUND IN" THE UNITED STATES AFTER DEPORTATION.**

14      Being "found in" the United States after deportation is a general intent crime. This means that
15 the government must prove the defendant knew "the facts that make his actions illegal, but not that the
16 action itself is illegal." United States v. Salazar-Gonzalez, 458 F.3d 851, 855 (9th Cir. 2006). Both the
17 Supreme Court and the Ninth Circuit have made clear that the intent general knowledge requirement
18 extends to both the proscribed act (*i.e.*, entering and remaining in the United States) and the facts that
19 make the act illegal (being an alien). C.f. Staples v. United States, 511 U.S. 600 (1994) (holding that a
20 federal firearms statute requires proof that the defendant knowingly possessed a firearm and that he
21 knew the weapon he possessed had characteristics bringing it within the scope of the statute.); United
22 States v. Lynch, 233 F.3d 1139 (9th Cir. 2000)(Provision of Archeological Resources Protection Act
23 imposing criminal liability for removing archeological resources from government land requires that
24 defendant knew that item intentionally removed was "archeological resource.").

25      The Ninth Circuit recently reiterated that 8 U.S.C. §1326 requires that the defendant know the
26 essential facts making his presence in the United States illegal. In Salazar Gonzalez, 458 F.3d at 858,
27 the panel held that the district court erred when it failed to instruct the jury that the defendant could not
28 be convicted unless the government proved he knew he was in the United States. Id. at 858. Because

"knowledge" was an essential element of the offense of being "found in" the United States after deportation, id. at 857, the defendant was entitled to a knowledge instruction, even without presenting any evidence himself.

The Ninth Circuit's reasoning is even more compelling when applied to the defendant's knowledge of his alienage. Because alienage is *the* fact that makes Mr. Hernandez-Contreras's remaining in the United States illegal, he must know that fact to be guilty of the general intent crime charged. This is true even though he need not have had the specific purpose to violate U.S. immigration laws. As an essential element of the crime, knowledge of alienage must be specifically alleged in the in the indictment. Because the indictment here alleges no *mens rea* at all, to assure that all facts necessary to convict him were "presented to...the grand jury that indicted him," the charges against Mr. Hernandez-Contreras must be dismissed.

The Ninth Circuit's decision in Rivera-Sillas, is not to the contrary. In that case, the Ninth Circuit rejected the argument that the district court erred by refusing to dismiss an indictment because it that did not allege the defendant knew he was in the United States. 367 F.3d at 1090. Emphasizing that § 1326 is not a strict liability offense, the Ninth Circuit nonetheless held that "alleging a defendant is a deported alien who is subsequently found in the United States without permission suffices to allege general intent" because a person physically present in the United States may be presumed to have acted to enter in this country. Id. (Internal citations omitted).

Rivera Sillas did not address whether the indictment must allege a defendant's knowledge of his alienage. Moreover, while the allegation that the defendant is a "deported alien who is subsequently found in the United States without permission" may give rise to an inference that the defendant knew he was in the United States and voluntarily entered, the same language does not lead to an inference that the defendant knew he was a non-citizen. The fact of an defendant's removal does not establish his alienage, much less his knowledge of alienage.[1] E.g. United States v. Ortiz-Lopez, 24 F.3d 53, 56 (9th Cir. 1994) (quote). Indeed, a defendant's alienage is seldom evaluated in depth in many removal

---

[1] Indeed, an Immigration Judge does not adjudicate alienage, though she may terminate proceedings based on evidence of citizenship.

1  proceedings, either because the respondent is unrepresented and unable to evaluate his citizenship, does
2  not want to remain in custody while contesting the allegations in the order to show cause, has agreed to
3  removal as part of a plea agreement entered into with insufficient information, or does not yet know the
4  facts that make him a United States citizen. Accordingly, unless the government presents some evidence
5  to the grand jury in addition to the fact of a removal–evidence that may, but need not, come from the
6  removal proceeding–the grand jury has no way to evaluate the defendant's knowledge of his own
7  alienage.[2]

8                                                           V.

9        **THE INDICTMENT MUST BE DISMISSED BECAUSE IT VIOLATES**
         **MR. HERNANDEZ-CONTRERAS'S RIGHT TO PRESENTMENT.**
10

11         Mr. Hernandez-Contreras has a Fifth Amendment right to have a grand jury pass upon those facts
12  necessary to convict him at trial.  In the indictment, the government included the language:  "It is further
13  alleged that defendant Gabriel Angel Hernandez-Contreras was removed from the United States
14  subsequent to October 14, 2003."[3]  The indictment in this case violates Mr. Hernandez-Contreras's right
15  to presentment in two ways.  First, the language added by the government does not ensure that the grand
16  jury actually found probable cause that Mr. Hernandez-Contreras was deported or removed in a legal
17  sense after October 14, 2003, as opposed to simply being physically removed in a practical way from the
18  United States.  Second, that the grand jury found probable cause to believe that Mr. Hernandez-
19  Contreras was removed "subsequent to October 14, 2003" does not address the possibility that the
20  government may at trial rely on a deportation that was never presented to, or considered by, the grand

21  _____

22      [2] The facts of United States v. Staples illustrate the limits of the presumptions relied upon
23  in Rivera-Sillas.  To date, no court has read Staples to permit a presumption that a defendant knew
    the particular characteristics bringing the firearm within the scope of the statute simply because he
24  possessed it.

25      [3]    Presumably, the government added this language in an attempt to comply with the
    Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006).  In
26  Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a
27  person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been
    removed from the United States following a conviction.  This language, however, does not cure the
28  problems with this indictment.

jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. Const. Amend. VI. Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment. See Russell, 369 U.S. at 763 (An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

To be sufficient, an indictment must allege every element of the charged offense. See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)). Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language:    "It is further alleged that defendant Gabriel Angel Hernandez-Contreras was removed from the United States subsequent to October 14, 2003." There is no indication from this "allegation" that the grand jury was charged with the term of art legal meaning of the word "removal" (as defined by the immigration code) applicable in this context, as opposed to being simply removed from the United States in a colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings). A deportation has the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)] a warrant of deportation was issued and [(3)] executed by the removal of the defendant from

the United States." See <u>United States v. Castillo-Basa</u>, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements of a deportation provided by the district court.) As this is the type of removal the government must prove before a petite jury, it is necessary that the government allege such a removal before the grand jury. As returned, however, there is no assurance from the face of the indictment that the grand jury in this case was charged with the <u>type</u> of removal necessary to increase a person's statutory maximum under section 1326(b).

As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to convict Mr. Hernandez-Contreras. Additionally, as charged, there is no fair assurance that the indictment will contain those allegations the government will attempt to prove at trial. If the government alleged before the grand jury that Mr. Hernandez-Contreras was removed (in a colloquial sense), but offers proof at trial that Mr. Hernandez-Contreras was removed (in an immigration sense), there will be a constructive amendment of the indictment at trial. See <u>Stirone v. United States</u>, 361 U.S. 212, 217-19 (1960). Either scenario represents a violation of Mr. Hernandez-Contreras's right to presentment. <u>Stirone</u>, 361 U.S. at 218-19.

A second problem with the indictment is that there is no indication which (if any) deportation the government presented to the grand jury. In many cases, the government will have a choice of multiple deportations to present to the grand jury to support an allegation that a person had been deported on a specific date. According to information provided by the government, although not conceded by the defendant, Mr. Hernandez-Contreras has been deported on several occasions. This renders it a very real possibility that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Hernandez-Contreras was removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its trial proof. If this were to turn out to be the case, Mr. Hernandez-Contreras's right to have the grand jury pass on all facts necessary to convict him would be violated. See <u>Du Bo</u>, 186 F.3d 1179.

Accordingly, Mr. Hernandez-Contreras requests production of grand jury transcripts, or at a minimum, that the government provide them to the Court in camera, to determine if the deportation found by the grand jury is the same as the one the government elects to use at trial in this case. Mr. Hernandez-Contreras respectfully requests that this Court order the government to make an election as to

which deportation they will choose to proceed upon. Without such an election, Mr. Hernandez-Contreras will be deprived of his Fifth Amendment grand jury notice rights and deprived of his opportunity to challenge his prior removal. After all, how can he mount a challenge to a proceeding that has not been identified as part of the case?

## VI.

## **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

At present, the government has provided only partial discovery in this case. Mr. Hernandez-Contreras is still awaiting a tape of the underlying deportation proceeding and any other documentary evidence that relates to the deportation with which the government elects to proceed. Without the aid of such information, defense counsel cannot adequately prepare or file substantive motions. Accordingly, Mr. Hernandez-Contreras respectfully requests leave of this Court to file additional motions after additional discovery has been provided, and after the government has made an election as to the specific deportation it intends to rely upon in this case.

## VII.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court grant the above motions.

Respectfully submitted,

Dated: December 9, 2007

S/ Benjamin P. Lechman
**BENJAMIN P. LECHMAN**
Attorney for Defendant Hernandez-Contreras