KAREN P. HEWITT
United States Attorney
EUGENE S. LITVINOFF
Assistant U.S. Attorney
California State Bar No. 214318
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5790 / (619) 235-2757 (Fax)
Email: Eugene.Litvinoff2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>ANTONIO REZA-LARA,<br>　　aka Gabriel Angel<br>　　　　　Hernandez-Contreras,<br><br>　　　　　Defendant. | Criminal Case No. 07CR3103-WQH<br><br>Date:　　　January 2, 2008<br>Time:　　　2:00 p.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:<br><br>(1)　COMPEL DISCOVERY;<br>(2)　DISMISS INDICTMENT;<br>(3)　ELECT DEPORTATION DATE; AND<br>(4)　LEAVE TO FILE FURTHER MOTIONS<br><br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES. |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel Karen P. Hewitt, United States Attorney, and Eugene S. Litvinoff, Assistant U.S. Attorney, and hereby files its Response and Opposition to the supplemental motions filed on behalf of the above-captioned defendant.  This Response and Opposition is based upon the files and records of this case.

# I

## INDICTMENT

On November 14, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging Antonio Reza-Lara, aka Gabriel Angel Hernandez-Contreras, ("Defendant") with illegal reentry after deportation, in violation of Title 8, United States Code, Section 1326. On November 15, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

### A.   IMMIGRATION HISTORY

Defendant is a Mexican citizen who was ordered deported after a hearing before an immigration judge on April 9, 2003. Pursuant to that deportation order, Defendant was physically removed from the United States, by foot through Nogales, Arizona, on July 27, 2007.

### B.   RAP SHEET SUMMARY CHART

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 10/14/2003 | USDC - S.D. Cal. | 8 U.S.C. § 1326 – Illegal Reentry After Deportation | 60 days |
| 11/19/1990 | USDC - S.D. Cal. | 8 U.S.C. § 1325 – Illegal Entry | 25 days |

### C.   INSTANT OFFENSES

#### 1.   Apprehension

On October 11, 2007, at approximately 4:00 p.m., United States Border Patrol Agent Ruben Gonzalez, Jr. was performing line watch duties in an area near the intersection of Clearwater and Dairymart Roads in San Ysidro, California, when he responded to a citizen's report of three individuals running northbound toward Clearwater Road. The area of the reported individuals is located approximately two miles west of the San Ysidro, California Port of Entry, and approximately 500 yards north of the international border between the United States and Mexico.

Government's Response – U.S. v. Reza-Lara

1    Upon a brief search of the area, Agent Gonzalez found Defendant hiding in the brush.  Agent

2    Gonzalez identified himself as a U.S. Border Patrol Agent and conducted an immigration

3    inspection.

4    **2.    Field Statement**

5    Defendant was questioned as to his citizenship; he stated that he is a citizen and national

6    of Mexico.  Defendant was also asked if he was in possession of any documents allowing him to

7    enter or remain in the United States legally.  Defendant did not have any such documents.

8    Defendant was transferred to the Imperial Beach Border Patrol Station for processing.

9    **3.    Advice of Rights**

10    Defendant was advised of his Miranda rights at approximately 1:20 p.m. on October 12,

11    2007.[1]  Defendant agreed to make a statement without the presence of counsel.

12    Defendant stated that he entered the United States by jumping the international boundary

13    fence separating the United States and Mexico.  He also stated that he was intending to go to Los

14    Angeles to visit his mother, and that he was going to return to Mexico after one night.  Defendant

15    admitted that he had been previously deported and that he knew he was unable to return to the

16    United States. He admitted that he is a citizen and national of Mexico, and that he does not possess

17    any documentation to be or remain in the United States legally.

18    / /

19    / /

20    / /

21    / /

22    / /

23

24    [1]    Approximately 21 hours elapsed between Defendant's arrest and his waiver of his
25    Miranda rights.  Defendant was initially being processed for a voluntary return to Mexico.
    However, on October 12, 2007, at approximately 7:30 a.m., Defendant assaulted a federal
26    officer.  After the assault, the Government instituted criminal proceedings against Defendant on
    the illegal reentry conduct.  Defendant was Mirandized soon after and agreed to make a
27    statement.

28    Government's Response – U.S. v. Reza-Lara

# III

## POINTS AND AUTHORITIES

### A.    THE GOVERNMENT WILL CONTINUE TO COMPLY WITH ALL ITS DISCOVERY OBLIGATIONS

The Government intends to fully comply with its discovery obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government has made approximately 37 pages of discovery and a DVD recording available to the defense. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

### (1)    The Defendant's Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's written and videotaped statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. <u>See</u> <u>United States v. Harris</u>, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. <u>See</u> <u>United States v. Brown</u>, 303 F.3d 582, 590 (5th Cir. 2002); <u>United States v. Coe</u>, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim

narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  <u>United States v. Spencer</u>, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.  <u>See</u> <u>United States v. Ramirez</u>, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not <u>Brady</u> material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment.  <u>Brown</u>, 303 F.3d at 595-96 (rough notes were not <u>Brady</u> material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or <u>Brady</u>, the notes in question will be provided to Defendant.

### (2)    Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.  The United States will provide to Defendant any existing dispatch tapes that relate to Defendant's apprehension.

### (3)    Brady Material

The United States is well aware of and will continue to perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  <u>Id.</u> at 774-75 (citation omitted).

Government's Response – U.S. v. Reza-Lara

1    The United States will turn over evidence within its possession which could be used to

2    properly impeach a witness who has been called to testify.

3    Although the United States will provide conviction records, if any, which could be used

4    to impeach a witness, the United States is under no obligation to turn over the criminal records of

5    all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

6    information, disclosure need only extend to witnesses the United States intends to call in its case-

7    in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

8    607 F.2d 1305, 1309 (9th Cir. 1979).

9    Finally, the United States will continue to comply with its obligations pursuant to

10   United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

11   **(4)**      **Sentencing Information**

12   Defendant claims that the United States must disclose any information affecting

13   Defendant's sentencing guidelines because such information is discoverable under Brady v.

14   Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such

15   disclosure obligation under Brady.

16   The United States is not obligated under Brady to furnish a defendant with information

17   which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady

18   is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already

19   known to the defendant. In such case, the United States has not suppressed the evidence and

20   consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

21   But even assuming Defendant does not already possess the information about factors which

22   might affect his guideline range, the United States would not be required to provide information

23   bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of

24   guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

25   Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time

26   when the disclosure remains in value."). Accordingly, Defendant's demand for this information

27   is premature.

28

Government's Response – U.S. v. Reza-Lara

1         **(5)     Defendant's Prior Record**

2         The United States has provided Defendant with a copy of his criminal record in accordance

3   with Federal Rule of Criminal Procedure 16(a)(1)(B).

4         **(6)     Proposed 404(b) and 609 Evidence**

5         Should the United States seek to introduce any similar act evidence pursuant to Federal

6   Rule of Evidence 404(b), or prior convictions pursuant to Rule 609, the United States will provide

7   Defendant with official notice of its proposed use of such evidence and information about such bad

8   acts or prior convictions at the time the United States' trial memorandum is filed.

9         In an abundance of caution, the United States hereby notices Defendant that it intends to

10   introduce evidence of his: (1) 2003 felony conviction illegal reentry after deportation, in violation

11   of 8 U.S.C. § 1326.  The United States also intends to introduce the facts underlying any prior

12   immigration-related apprehensions and/or prior deportations and removals.

13         **(7)     Evidence Seized**

14         The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

15   allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

16   evidence which is within the possession, custody or control of the United States, and which is

17   material to the preparation of Defendant's defense or are intended for use by the United States as

18   evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

19   The United States, however, need not produce rebuttal evidence in advance of trial.  <u>United States</u>

20   <u>v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), <u>cert. denied</u>, 474 U.S. 953 (1985).

21         **(8)     Preservation of Evidence**

22         The United States will preserve all evidence to which Defendant is entitled pursuant to the

23   relevant discovery rules.  However, the United States objects to any blanket request to preserve

24   all physical evidence.

25         The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

26   allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

27   evidence which is within his possession, custody or control of the United States, and which is

28

Government's Response – U.S. v. Reza-Lara

07CR3103-WQH

1  material to the preparation of Defendant's defense or are intended for use by the United States as

2  evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

3  The United States has made the evidence available to Defendant and Defendant's investigators and

4  will comply with any request for inspection.

5      **(9)**      **Tangible Objects**

6         The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

7  allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

8  tangible objects seized that is within its possession, custody, or control, and that is either material

9  to the preparation of Defendant's defense, or is intended for use by the Government as evidence

10  during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

11  need not, however, produce rebuttal evidence in advance of trial.  United States v. Givens, 767

12  F.2d 574, 584 (9th Cir. 1984).

13      **(10)**    **Evidence of Bias or Motive to Lie**

14         The United States is unaware of any evidence indicating that a prospective witness is biased

15  or prejudiced against Defendant.  The United States is also unaware of any evidence that

16  prospective witnesses have a motive to falsify or distort testimony.

17      **(11)**    **Impeachment Evidence**

18         The United States will turn over evidence within its possession which could be used to

19  properly impeach a witness who has been called to testify.

20      **(12)**    **Criminal Investigation of Government Witness**

21         Defendants are not entitled to any evidence that a prospective witness is under criminal

22  investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

23  witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

24  United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

25  of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

26  States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

27  the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a

28

Government's Response – U.S. v. Reza-Lara

1    defendant with the criminal records of the Government's intended witnesses.") (citing <u>Taylor</u>, 542

2    F.2d at 1026).

3        The Government will, however, provide the conviction record, if any, which could be used

4    to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

5    information, disclosure need only extend to witnesses the United States intends to call in its case-

6    in-chief.  <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>,

7    607 F.2d 1305, 1309 (9th Cir. 1979).

8        **(13)    <u>Evidence Affecting Perception, Recollection, Communication or Truth-Telling</u>**

9        The United States is unaware of any evidence indicating that a prospective witness has a

10    problem with perception, recollection, communication, or truth-telling.

11        **(14)    <u>Witness Addresses</u>**

12        The Government has already provided Defendant with the reports containing the names of

13    the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital

14    case, however, has no right to discover the identity of prospective Government witnesses prior to

15    trial.  <u>See Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>United States v. Dishner</u>, 974 F.2d

16    1502, 1522 (9th Cir 1992) (citing <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985)); <u>United

17    States v. Hicks</u>, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the

18    Government will provide Defendant with a list of all witnesses whom it intends to call in its case-

19    in-chief, although delivery of such a witness list is not required.  <u>See United States v. Discher</u>, 960

20    F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).   The

21    Government is not aware of any "tips" provided by anonymous or identified persons that resulted

22    in Defendant's arrest.

23        The Government objects to any request that the Government provide a list of every witness

24    to the crimes charged who will not be called as a Government witness.  "There is no statutory basis

25    for granting such broad requests," and a request for the names and addresses of witnesses who will

26    not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  <u>United States v. Hsin-

27    Yung</u>, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting <u>United States v. Boffa</u>, 513 F. Supp. 444, 502

28

Government's Response – U.S. v. Reza-Lara

(D. Del. 1980)).  The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant.  <u>Wood v. Bartholomew</u>, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under <u>Brady</u>).

### **(15)    Witnesses Favorable to the Defendant**

As stated earlier, the Government will continue to comply with its obligations under <u>Brady</u> and its progeny.  At the present time, the Government is not aware of any witnesses who have made an arguably favorable statements concerning Defendant or who could not identify him or who were unsure of his identity or participation in the crime charged.

### **(16)    Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations.  However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  <u>Gardner</u>, 611 F.2d at 774-775 (citation omitted).

### **(17)    Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. <u>United States v. Boshell</u>, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing <u>Goldberg v. United States</u>, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act

Government's Response – U.S. v. Reza-Lara

1    material _after_ the witness testifies, the Government plans to provide most (if not all) Jencks Act

2    material well in advance of trial to avoid any needless delays.

3        **(18)**    **Inspection and Copying of A-File**

4        The United States does not oppose this request.  The Government will work with defense

5    counsel to come to a mutually agreeable time to inspect Defendant's A-File at the United States

6    Attorney's Office.

7        **(19)**    **The Record of Any Deportation Hearing**

8        The United States will provide Defendant a copy of the deportation tape for the April 9,

9    2003 deportation hearing.  All subsequent removals resulted from the reinstatement of the April

10    9, 2003 deportation order.

11        **(20)**    **Giglio Information**

12        As stated previously, the United States will comply with its obligations pursuant to <u>Brady

13    v. Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir.

14    1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

15

16    **B.**    **DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO**
               **PLEAD ELEMENT OF DEPORTATION DATE SHOULD BE DENIED**

17

18        Relying on the Ninth Circuit's recent decision in <u>United States v. Salazar-Lopez</u>, No. 06-

19    50438, 2007 WL 3085906 (9th Cir. Oct. 24, 2007), Defendant argues that the indictment must be

20    dismissed because "fails to offer an actual date of removal." [Def. Mot. 6.]  Not only is Defendant

21    mistaken, but <u>Salazar-Lopez</u> approves of the language that is found in the indictment against this

22    Defendant.  Specifically, the Ninth Circuit stated that "the date of the removal, <u>or at least the fact

23    that [Defendant] had been removed _after_ his conviction, should have been alleged in the indictment

24    and proved to the jury</u>." <u>Id.</u> at *2 (emphasis added).  The indictment addressed by the Ninth

25    Circuit in <u>Salazar-Lopez</u> did not have the requisite language, and therefore the Court performed

26    a harmless error analysis. <u>Id.</u> at *3-6.  Here, however, the indictment expressly states: "It is further

27    alleged that defendant ANTONIO REZA-LARA, AKA Gabriel Angel Hernandez-Contreras, was

28

Government's Response – U.S. v. Reza-Lara

removed from the United States subsequent to October 14, 2003." Because this language is required by the Ninth Circuit, Defendant's motion must be denied.

## C.  THE INDICTMENT SUFFICIENTLY ALLEGED MENS REA

Defendant also moves to dismiss the indictment on the basis that it fails to specifically allege the mens rea element of the charged offense. [Def. Mot. 7-9.] As above, this argument was raised in the Ninth Circuit in <u>Riveras-Sillas</u> and rejected. The Ninth Circuit found that illegal re-entry is a general intent crime, but that "alleging that the defendant is a deported alien subsequently found in the United States without permission suffices to allege general intent." 417 F.3d at 1020 (internal brackets and citation omitted). This motion should likewise be denied.

## D.  THE INDICTMENT DOES NOT VIOLATE DEFENDANT'S RIGHT TO PRESENTMENT

Defendant argues that the indictment violates his rights under the Fifth Amendment's Presentment Clause. Defendant claims that: (1) there is no indication from this 'allegation' that the grand jury "was charged with the term of art [sic] legal meaning of the word 'removal' . . . as opposed to being simply removed from the United States in a colloquial sense"; and (2) that the Government "will attempt to prove at trial a wholly different deportation [than that presented to the grand jury] to sustain its trial proof." [Def. Mot. 10-11.] Defendant's claims lack merit.

In the first place, there is no basis for Defendant to argue that the Government might try to offer evidence of a removal that differs from the one presented to the grand jury, much less that this would be improper. As the Court is aware, Defendant's argument is undercut by the fact that the Government often presents evidence in § 1326 prosecutions of multiple deportations. This longstanding practice belies Defendant's claim that the Government is limited to proving one deportation and that this particular deportation must be presented to the grand jury. Even apart from that practice, it is not at all clear that an element of § 1326 is the *date* of a deportation rather than the *fact* of deportation itself. If <u>Covian-Sandoval</u>, 462 F.3d at 1097-98, does not hold that the date is an element of the offense, then the Presentment Clause

Government's Response – U.S. v. Reza-Lara

1   is not even implicated.  In any event, this is a moot point, as the Government has produced

2   discovery showing precisely when Defendant was ordered deported by an immigration judge –

3   April 9, 2003 – and when Defendant was removed pursuant to reinstatement of the deportation

4   order – July 27, 2007.  The reinstatement date is a date subsequent to October 14, 2003 – the

5   date alleged in the indictment.

6          Furthermore, the Court should reject Defendant's motion to dismiss the indictment

7   based on his speculation regarding the adequacy of the instructions to the grand jury regarding

8   legal terms such as "removal" or "deportation."  The U.S. Supreme Court has held that the

9   Fifth Amendment right not to be tried for a crime not presented to a grand jury is triggered by

10  "only a defect so fundamental that it causes the grand jury no longer to be a grand jury, or the

11  indictment no longer to be an indictment."  Midland Asphalt Corp. v. United States, 489 U.S.

12  794, 802 (1989).  If a grand jury returns an indictment when there is insufficient evidence to

13  indict, the greatest safeguard is the petit jury and the rules governing its determination of

14  guilty.  United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1392 n.7 (9th Cir. 1983).  An

15  accused's *only* cognizable interest in grand jury proceedings—and thus the *only* interest that

16  courts can vindicate by dismissing an indictment on constitutional grounds—is the right to

17  have a legally constituted grand jury make an informed and independent evaluation of the

18  evidence to determine if there is probable cause to believe him guilty of a crime.  Id. (citing

19  United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982) (assuming erroneous grand jury

20  instructions but still refusing to dismiss indictment)).  The defendant must show that the

21  prosecutor's conduct was "so flagrant" that it deceived the grand jury in a significant way,

22  thereby infringing on its ability to exercise independent judgment.  See Wright, 667 F.2d at

23  796.

24         In United States v. Kenny, 645 F.2d 1323 (9th Cir. 1981), the Ninth Circuit rejected the

25  defendant's request to dismiss the indictment on the basis of his allegation that the grand jury

26  returned a true bill without any instruction on the applicable law.  The Court stated that it was

27

28  Government's Response – U.S. v. Reza-Lara

1    "not persuaded that the Constitution imposes the additional requirement that grand jurors

2    receive legal instructions" and warned that "the giving of such instructions portends protracted

3    review of their adequacy and correctness." Id. at 1347.

4            In this case, Defendant seeks to accomplish precisely what Kenny feared.  Namely, he

5    wishes for this Court to review the adequacy and correctness of any instruction to the grand

6    jury.  The Court cannot do so.  This is particularly true considering that even if there was

7    evidence—rather than merely Defendant's speculation—that the grand jury was not instructed

8    on an element of the offense, this would not be sufficient grounds to compel the dismissal of

9    the indictment.  See United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir. 1989), overruled

10   on other grounds by Midland Asphalt, 489 U.S. at 799-800.

11           Defendant does not and cannot credibly allege that the Government attempted to

12   mislead the grand jury.  Furthermore, there is no basis to suppose that the grand jury was

13   impaired in its ability to independently evaluate the evidence.  Because Defendant has nothing

14   but pure speculation to support his motion to dismiss, it should be denied.  Especially when

15   viewed in conjunction with his request for production of grand jury transcripts, see infra Part

16   III.C, the motion is nothing more than a fishing expedition.

17   **E.      THE  GOVERNMENT  DOES  NOT  OPPOSE  LEAVE  TO  FILE  FURTHER
        MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE**

18
19           The Government does not object to the granting of leave to file further motions as long as

20   the order applies equally to both parties and any additional defense motions are based on newly

     discovered evidence or discovery provided by the Government subsequent to the instant motion.
21
     //
22
     //
23
     //
24
     //
25
     //
26
     //
27

28   Government's Response – U.S. v. Reza-Lara

                                    14                              07CR3103-WQH

1

**VI**

2

**CONCLUSION**

3        For the foregoing reasons, the United States requests that the Court deny Defendant's

4   supplemental motions, except where unopposed.

5        DATED: December 26, 2007

6

7                                                    Respectfully submitted,

8                                                    KAREN P. HEWITT
9                                                    United States Attorney

10                                                   /s/ *Eugene S. Litvinoff*

11                                                   _____
                                                     EUGENE S. LITVINOFF
12                                                   Assistant United States Attorney
                                                     Attorneys for Plaintiff
13                                                   United States of America
                                                     Email: Eugene.Litvinoff2@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Government's Response – U.S. v. Reza-Lara

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 07CR3103-WQH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CERTIFICATE OF SERVICE |
| ANTONIO REZA-CONTRERAS, ) | |
| aka Gabriel Angel ) | |
| Hernandez-Contreras, ) | |
| ) | |
| Defendant. ) | |
| ) | |

IT IS HEREBY CERTIFIED THAT:

I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I have caused service of **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **1.**    **Benjamin P. Lechman, Esq.**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 26, 2007.

/s/ *Eugene S. Litvinoff*
EUGENE S. LITVINOFF
Assistant U.S. Attorney

Government's Response – U.S. v. Reza-Lara

07CR3103-WQH