KAREN P. HEWITT
United States Attorney
EUGENE S. LITVINOFF
Assistant U.S. Attorney
California State Bar No. 214318
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5790
Fax: (619) 235-2757
Email: Eugene.Litvinoff2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR3103-WQH |
| Plaintiff, | DATE: March 17, 2008 |
| | TIME: 2:00 p.m. |
| v. | |
| | UNITED STATES' MOTIONS IN LIMINE TO: |
| ANTONIO REZA-LARA, | |
| aka Gabriel Angel Hernandez-Contreras, | (A)  PRECLUDE ALL WITNESSES EXCEPT CASE AGENT; |
| | (B)  PRECLUDE SELF-SERVING HEARSAY; |
| Defendant. | (C)  PROHIBIT REFERENCE TO WHY DEFENDANT RE-ENTERED THE UNITED STATES; |
| | (D)  PROHIBIT REFERENCE TO PRIOR RESIDENCY; |
| | (E)  ADMIT A-FILE DOCUMENTS; |
| | (F)  ADMIT EXPERT TESTIMONY; |
| | (G)  PROHIBIT REFERENCE TO PUNISHMENT; |
| | (H)  PRECLUDE ARGUMENT REGARDING WARNING |
| | (I)  PRECLUDE ARGUMENT REGARDING DURESS AND NECESSITY; |
| | (J)  PRECLUDE EXAMINATION OR REFERENCE TO POOR RECORD KEEPING; |
| | (K)  PROHIBIT COLLATERAL ATTACK OF DEPORTATION; |
| | (L)  PRECLUDE EXPERT TESTIMONY BY DEFENSE; |
| | (M)  ADMIT DEPORTATION HEARING AUDIO TAPE OR TRANSCRIPT; |
| | (N)  ADMIT 609 EVIDENCE; |
| | (O)  ADMIT 404(B) EVIDENCE; |
| | (P)  TAKE FINGERPRINT EXEMPLARS; AND |
| | (Q)  ORDER RECIPROCAL DISCOVERY |

07CR3103-WQH

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Eugene S. Litvinoff, Assistant U.S. Attorney, and hereby files its Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF FACTS

**A.    IMMIGRATION HISTORY**

Defendant is a Mexican citizen who was ordered deported after a hearing before an immigration judge on April 9, 2003. Pursuant to that deportation order, Defendant was physically removed from the United States, by foot through Nogales, Arizona, on July 27, 2007.

**B.    RAP SHEET SUMMARY CHART**

| CONVICT DATE | COURT OF CONVICTION | CHARGE | TERM |
|---|---|---|---|
| 10/14/2003 | USDC - S.D. Cal. | 8 U.S.C. § 1326 – Illegal Reentry After Deportation | 60 days |
| 11/19/1990 | USDC - S.D. Cal. | 8 U.S.C. § 1325 – Illegal Entry | 25 days |

**C.    INSTANT OFFENSES**

    **1.    Apprehension**

On October 11, 2007, at approximately 4:00 p.m., United States Border Patrol Agent Ruben Gonzalez, Jr. was performing line watch duties in an area near the intersection of Clearwater and Dairymart Roads in San Ysidro, California, when he responded to a citizen's report of three individuals running northbound toward Clearwater Road. The area of the reported individuals is located approximately two miles west of the San Ysidro, California Port of Entry, and approximately 500 yards north of the international border between the United States and Mexico. Upon a brief search of the area, Agent Gonzalez found Defendant hiding in the brush. Agent Gonzalez identified himself as a U.S. Border Patrol Agent and conducted an immigration inspection.

/ /

/ /

1

### 2.    Field Statement

2    Defendant was questioned as to his citizenship; he stated that he is a citizen and national of

3    Mexico.  Defendant was also asked if he was in possession of any documents allowing him to enter or

4    remain in the United States legally.  Defendant did not have any such documents.  Defendant was

5    transferred to the Imperial Beach Border Patrol Station for processing.

6

### 3.    Advice of Rights

7    Defendant was advised of his <u>Miranda</u> rights at approximately 1:20 p.m. on October 12, 2007.[1/]

8    Defendant agreed to make a statement without the presence of counsel.

9    Defendant stated that he entered the United States by jumping the international boundary fence

10   separating the United States and Mexico.  He also stated that he was intending to go to Los Angeles to

11   visit his mother, and that he was going to return to Mexico after one night.  Defendant admitted that he

12   had been previously deported and that he knew he was unable to return to the United States.  He

13   admitted that he is a citizen and national of Mexico, and that he does not possess any documentation to

14   be or remain in the United States legally.

15

## II

16

## POINTS AND AUTHORITIES

17

### A.    THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE
18   EXCEPTION OF THE GOVERNMENT'S CASE AGENT

19   Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

20   essential to the presentation of the party's cause" should not be ordered excluded from the court during

21   trial.  The case agent in the present matter has been critical in moving the investigation forward to this

22   point and is considered by the United States to be an integral part of the trial team.  As such, the case

23   agent's presence at trial is necessary to the United States.  The United States requests that Defendant's

24   testifying witnesses be excluded during trial pursuant to Rule 615 unless the defense can make a similar

25   showing for any of its witnesses.

26

27   [1/]    Approximately 21 hours elapsed between Defendant's arrest and his waiver of his <u>Miranda</u> rights.  Defendant was initially being processed for a voluntary return to Mexico.  However,
28   on October 12, 2007, at approximately 7:30 a.m., Defendant assaulted a federal officer.  After the assault, the Government instituted criminal proceedings against Defendant on the illegal reentry conduct.  Defendant was Mirandized soon after and agreed to make a statement.

07CR3103-WQH

1

**B.    THE COURT SHOULD PRECLUDE SELF-SERVING HEARSAY**

2

Defendant may attempt to prove his own statements through the testimony of another witness.

3

Defendant may not do so for several reasons.

4

First, Defendant cannot rely on Rule 801(d)(2) of the *Federal Rules of Evidence* to admit self-

5

serving hearsay.  Under Rule 801(d)(2), a statement of a party is not hearsay *only when it is being*

6

*offered <u>against</u> the party*—not when it is being offered on his behalf.  See <u>United States v. Fernandez</u>,

7

839 F.2d 639, 640 (9th Cir. 1988).  Defendant would be the proponent of the evidence; it would not be

8

offered against him.  Thus, Defendant would be seeking improperly to have his own self-serving hearsay

9

statements brought before the jury without allowing the Government to cross-examine the defendant

10

himself.  See <u>id.</u>

11

Second, Defendant could not admit such testimony under Rule 801(d)(1)(B).  This rule provides

12

an exception to the hearsay rule for a statement offered to rebut a charge of recent fabrication.  However,

13

the testimony would be admissible only if the defendant himself were to take the stand and be

14

impeached.  See <u>United States v. Navarro-Vareles</u>, 551 F.2d 1331, 1334 (9th Cir. 1976).

15

Finally, Defendant's out-of-court statements would not be admissible under Rule 803(3)—the

16

only other rule that might conceivably apply.  Rule 803(3) excludes from the definition of hearsay a

17

statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such

18

as intent, plan, motive, design, mental feeling, pain and bodily health) *but not including a statement of*

19

*memory or belief to prove the fact remembered or believed.*"  <u>United States v. Cohen</u>, 631 F.2d 522 (5th

20

Cir. 1980) (emphasis added).  "A person's belief may not be proved by previous out-of-court

21

statements."  <u>Id.</u>  Indeed, <u>United States v. Emmert</u>, 829 F.2d 805 (9th Cir. 1987), clearly precludes the

22

defendant from introducing his beliefs through statements of other witnesses.  In <u>Emmert</u>, the Ninth

23

Circuit affirmed the decision of U.S. District Judge Rudi M. Brewster to exclude testimony by a witness

24

that the defendant told the witness that the defendant was afraid of government agents.  The Ninth

25

Circuit cited <u>Cohen</u> with approval and emphasized that Rule 803(3) excludes evidence of a statement

26

of belief in order to prove the fact believed.  For the rule to have any effect, the Court stated, it must be

27

understood to limit the universe of admissible statements to declarations of condition, *i.e.*, "I'm scared"

28

and not belief, *i.e.*, "I'm scared because an undercover agent threatened me."  See <u>id.</u>

**C.    THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT ILLEGALLY RE-ENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his re-entry, or alternatively, his belief that he was entitled to do so.  Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here.  The Court should preclude him from doing so.  Evidence of *why* Defendant violated 8 U.S.C. § 1326 is irrelevant to the question of *whether* he did so—the only material issue in this case.

Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.  Rule 402 states that evidence "which is not relevant is not admissible."  Fed. R. Evid. 402.  Here, the reason why Defendant re-entered the United States and was found in the United States, and any alleged belief that he was justified in doing so, is irrelevant to whether he violated the statute.

The Government's position is illustrated by <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980).  In <u>Komisarak</u>, the defendant was convicted of willfully damaging government property by vandalizing an Air Force computer.  <u>See id.</u> at 491.  On appeal, she argued that the district court erred in granting the government's motions *in limine* to preclude her from introducing her "political, religious, or moral beliefs" at trial.  <u>Id.</u> at 492.  In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions.  <u>Id.</u> at 492-93.  The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," <u>id.</u> at 492, and the Ninth Circuit affirmed.  Similarly here, the reason why Defendant re-entered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, is irrelevant to any fact at issue in this case.

**D.    THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY**

If Defendant seeks to introduce evidence at trial of any former residence in the United States, legal or illegal, the Court should preclude him from doing so.  This evidence is irrelevant, inconsistent with congressional intent, and unduly prejudicial.

07CR3103-WQH

In <u>United States v. Ibarra</u>, 3 F.3d 1333, 1334 (9th Cir. 1993), <u>overruled on limited and unrelated grounds by</u> <u>United States v. Alvarado-Delgado</u>, 98 F.3d 492, 493 (9th Cir. 1996), the district court granted the United States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a § 1326 prosecution. <u>Id.</u> The Ninth Circuit affirmed, reasoning that the district court properly excluded the evidence as irrelevant because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage.

Similarly, in <u>United States v. Serna-Vargas</u>, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion *in limine* to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. <u>Id.</u> at 711. Specifically, she sought to introduce evidence of: (1) involuntariness of initial residence; (2) continuous residency since childhood; (3) fluency in the English language; and (4) legal residence of immediate family members. <u>See id.</u> at 712. The court refused to admit the evidence, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." <u>Id.</u> at 712. The court also noted that admission of the evidence would run "contrary to the intent of Congress." <u>Id.</u> In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952, 8 U.S.C. § 1182(c), the Attorney General of the United States may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for seven years. <u>See id.</u> at 712-13.

Put differently, the court found that the factors which the defendant relied upon to establish her *de facto* citizenship are "among the factors the Attorney General considers in deciding whether to exercise this discretion." <u>Id.</u> at 713. Thus, "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." <u>Id.</u> Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." <u>Id.</u> In particular, "under the scheme envisioned by Congress, *an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries*." <u>Id.</u> (emphasis added).

//
//
//

6

07CR3103-WQH

1    **E.    THE COURT SHOULD ADMIT A-FILE DOCUMENTS**

2        **1.    A-File Documents are Admissible as Public Records or Business Records.**

3        The Government intends to offer documents from the Immigration and Naturalization Service's

4    ("INS") "A-File" that corresponds to Defendant's name in order to establish Defendant's alienage, prior

5    deportation, and that he was subsequently found in the United States without having sought or obtained

6    authorization from the Attorney General.  The documents are self-authenticating "public records," Fed.

7    R. Evid. 803(8)(B), or, alternatively, "business records."  Fed. R. Evid. 803(6).

8        The Ninth Circuit has addressed the admissibility of A-File documents in United States v.

9    Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997).  There, Loyola-Dominguez appealed his § 1326

10    conviction, arguing that the district court erred in admitting at trial certain records from his A-File.  See

11    id. at 1317.  The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the

12    defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation.  The defendant

13    in Loyola-Dominguez argued that admission of the documents violated the rule against hearsay and

14    denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments,

15    holding that the documents were properly admitted as public records.  Id. at 1318.  The court first noted

16    that documents from a defendant's immigration file, although "made by law enforcement

17    agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns

18    animating the law enforcement exception to the public records exception."  Id. (quoting United States

19    v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)).  The court also held that such documents

    are self-authenticating and, therefore, do not require an independent foundation.  Id.

20        Consistent with Loyola-Dominguez, this Circuit has consistently held that documents from a

21    defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage

22    and prior deportation.  See, e.g., United States v. Ballesteros-Selinger, 454 F.3d 973 at 974-75 (9th Cir.

23    2006) (district court properly admitted order of immigration judge); United States v. Mateo-Mendez,

24    215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence);

25    United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant

26    of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas,

27    617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States

28    v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records

1   and memoranda of the Immigration and Naturalization Service" as business records, noting that records

2   would also be admissible as public records); <u>United States v. Mendoza-Torres</u>, 285 F. Supp. 629, 631

3   (D. Ariz. 1968) (admitting warrant of deportation).

### 2.    A Certificate of Non-Existence Does Not Violate the Confrontation Clause.

4

5       The Ninth Circuit has held that a Certificate of Non-existence of Record ("CNR") is not

6   "testimonial" within the meaning of <u>Crawford v. Washington</u>, 124 S. Ct. 1354 (2004), and therefore may

7   be admitted without violating the Confrontation Clause.  <u>See</u> <u>United States v. Cervantes-Flores</u>, 421

8   F.3d 825, 831-33 (9th Cir. 2005).  Accordingly, the CNR is admissible.

### F.    THE COURT SHOULD ADMIT EXPERT TESTIMONY

9

10      If specialized knowledge will assist the jury in understanding the evidence or determining a fact

11  in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed. R.

12  Evid. 702.  Whether expert testimony is helpful to the jury is left to the sound discretion of the trial

13  judge.  <u>See</u> <u>United States v. Alonso</u>, 48 F.3d 1536, 1539 (9th Cir. 1995); <u>United States v. Lennick</u>, 18

14  F.3d 814, 821 (9th Cir. 1994).  An expert's opinion may be based on hearsay or facts not in evidence

15  where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed.

16  R. Evid. 703.  In addition, an expert may provide opinion testimony even if the testimony embraces an

    ultimate issue to be decided by the trier-of-fact.  Fed. R. Evid. 704.

17      In this case, the Government intends to offer testimony of a fingerprint expert to identify the

18  Defendant as the person who was previously deported.  Expert testimony from a trained fingerprint

19  examiner will certainly help the jury resolve questions about the defendant's identity and whether he

20  has illegally re-entered the United States after being previously deported. Accordingly, the Court should

21  admit the testimony of the Government's fingerprint expert.

### G.    THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT

22

23

24      Evidence and argument referring to Defendant's health, age, finances, education and potential

25  punishment is inadmissible and improper.

26      As noted previously, Rule 402 provides that "[e]vidence which is not relevant is not admissible,"

27  and Rule 403 provides that even relevant evidence may be inadmissible "if its probative value is

28  substantially outweighed by the danger of unfair prejudice."  The Ninth Circuit Model Jury Instructions

    explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices,

or sympathy." 9th Cir. Model Jury Instructions § 3.1 (2000).[2/]  While Defendant's health, age, finances, education and proper punishment may be relevant at sentencing, 18 U.S.C. § 3553(f), references to such facts at trial are irrelevant, unfairly prejudicial, and blatantly improper plays for sympathy and jury nullification.

### H.    THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING PERMISSION TO RE-ENTER BASED UPON "WARNING TO ALIEN DEPORTED"

The Court should preclude any argument that Defendant believed:  (1) he was not required to obtain the permission from the Attorney General, or his designated successor at the Secretary of the Department of Homeland Security, prior to re-entering the United States; or (2) he had permission to enter the United States based on any confusion or alleged error in the execution of the I-294 Warning to an Alien Deported.  The Ninth Circuit has held that such a claim is legally insufficient and that such an argument is improper.  See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000).

### I.    THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING DURESS AND NECESSITY

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during opening statements, closing arguments, or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense.

It is well-settled that a court may preclude a defense where, as in this case, "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense."  United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992); see also United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996) (same).  Specifically, if a defendant fails to make a threshold showing as to each and every element of the affirmative defense, comments related to the defense are improper and should be excluded.  See Bailey, 444 U.S. at 416; Schoon, 971 F.2d at 195 (court may bar defense if "proof is deficient with regard to any of the . . . elements.").

---

[2/]    Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict, United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), such as references to punishment or the collateral consequences of a conviction.

9

In order to rely on the defense of duress, Defendant must establish a prima facie case that: (1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm; (2) Defendant had a well-grounded fear that the threat would be carried out; (3) there was no reasonable opportunity to escape the threatened harm. Bailey, 444 U.S. at 410-11; Moreno, 102 F.3d at 997. Similarly, in order to rely on the defense of necessity, Defendant must establish each of the following four elements: (1) that he was faced with a choice of evils and chose the lesser evil; (2) that he acted to prevent imminent harm; (3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and (4) that there was no other legal alternatives to violating the law. See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985).

The United States is unaware of any evidence that would support the defenses of either duress or necessity. Accordingly, the United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments when, as anticipated, there is an inadequate factual basis for them.

### J.    THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) INS's or the Department of Homeland Security's ("DHS") recordkeeping or means of accessing information and records. Specifically, the United States seeks to preclude reference to argument that: (1) INS computers are not fully interactive with other federal agencies' computers; (2) over two million documents filed by immigrants allegedly have been lost or forgotten; (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States; or (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to Defendant. In this case, such argument is irrelevant because there has been no proffer or mention by Defendant that he ever made application to seek re-entry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming rulings by U.S. District Court Judge James M. Lorenz decision to exclude such testimony in a § 1326 "found in" case with similar facts).

In Rodriguez-Rodriguez, the Ninth Circuit explicitly rejected defense counsel's claim that the exclusion of such testimony violates the Confrontation Clause. In fact, the Court stated that "none of the information is relevant on the facts of this case, because it is uncontested that Rodriguez never made

any application to the INS or any other federal agency." Thus, at minimum, absent a proffer that Defendant had, in fact, applied for or obtained permission to enter or remain in the United States, any such line of inquiry on cross-examination or on direct testimony is irrelevant and should be excluded.

Additionally, the United States seeks to preclude reference to shredding of immigration documents by a former INS contractor as set forth in United States v. Randall, et al., Criminal Case No. SA CR 03-26-AHS (C.D. Cal. 2003), *unless* the defendant testifies or offers evidence that both: (1) he did, in fact, apply for permission to re-enter the United States from the Attorney General, or his designated successor, the Secretary of DHS; *and* (2) such a document would have been stored at that particular facility where the shredding occurred in the Randall case. Any reference to document destruction is irrelevant and unfairly prejudicial unless there is some evidence offered by the Defendant at trial actually sought permission to reenter the United States. See Fed. R. Evid. 401-403.

Moreover, even if the Defendant offers evidence that he did apply, there must be some showing that his application would have been stored at the facility which is the subject of the Randall case during the time of the alleged shredding of the documents. Otherwise, it is immaterial and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service Center in Laguna Niguel, California. If Defendant did not apply—or if he did apply but his application was not stored there—then he could not have been prejudiced by any alleged shredding. Indeed, any such testimony—as well as any such statements asserted in Defendant's opening or closing arguments—would be unfairly prejudicial to the United States and would likely cause confusion to the jury, for such unsupported blanket allegations or references of document destruction or poor recordkeeping would be misleading. Accordingly, the United States seeks an order precluding such argument.

**K.    THE COURT SHOULD PROHIBIT ANY COLLATERAL ATTACK ON DEFENDANT'S DEPORTATION**

The lawfulness of Defendant's prior deportation order is not an element of the offense in a prosecution under 8 U.S.C. § 1326. Therefore, any question about the lawfulness of the deportation should not be submitted to the jury for determination.

In United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), the Ninth Circuit overruled its prior decision in United States v. Ibarra, 3 F.3d 1333 (9th Cir. 1993), insofar as it held that the lawfulness of a prior deportation is an element of the offense under § 1326. The Alvarado-Delgado

11

1    Court noted that while some jurisdictions hold that a prior deportation is an element of the offense if the

2    deportation is "lawful," the statute itself contains no such limitation, stating simply "[a]ny alien who has

3    been arrested and deported or excluded or deported," 8 U.S.C. § 1326(a)(1), "will be guilty of a felony

4    if the alien thereafter, enters, attempts to enter, or is at any time found in the United States."  8 U.S.C.

5    § 1326(a)(2).

6         As a matter of law, all that the Government has to prove is that the Defendant is the same person

7    who was removed on July 27, 2007.  See United States v. Suarez-Rosario, 237 F.3d 1164 (9th Cir.

8    2001).  Because the lawfulness of the prior deportation is not an element of the offense under § 1326,

9    Defendant does not have a right to have the issue determined by a jury.  This includes any attempt by

10   Defendant to challenge the prior deportation as invalid due to any alleged deportation under an alias or

11   fictitious name.

12        **L.      THE COURT SHOULD PRECLUDE ANY EXPERT TESTIMONY BY DEFENSE WITNESSES**

13        The United States has requested reciprocal discovery from the defendant.  The Government is

14   permitted to inspect and copy or photograph any results or reports of physical or mental examinations

15   and of scientific tests or experiments made in connection with the particular case, or copies thereof,

16   within the possession or control of Defendant, which Defendant intends to introduce as evidence in his

17   case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial.

18   Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use at

19   trial.   Fed. R. Evid. 702, 703, 705.   The summaries are to describe the witnesses's opinions,

20   qualifications, and bases and reasons for their opinions.  While defense counsel may wish to call an

21   expert to testify, Defendant has provided neither notice of any expert witness, nor any reports by expert

22   witnesses.  Accordingly, Defendant should not be permitted to introduce any expert testimony.

23        If the Court determines that Defendant may introduce expert testimony, the United States

24   requests a hearing to determine this expert's qualifications and relevance of the expert's testimony

25   pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999).

26   See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not

27   admit the defendant's proffered expert testimony because there had been no showing that the proposed

28   testimony related to an area that was recognized as a science or that the proposed testimony would assist

1    the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.

2    2000).

3    **M.    THE COURT SHOULD ADMIT THE AUDIO TAPE OR TRANSCRIPT OF THE DEPORTATION HEARING**

4    Defendant appeared before an immigration judge on April 9, 2003.  This event is recorded in

5    both the order issued by the immigration judge and also by the audio tape of the hearing.  In the audio

6    tape, Defendant makes several relevant admissions under oath regarding his citizenship and ineligibility

7    to return to the United States for any reason.  Since all of these admissions by Defendant tend to prove

8    the elements of the charged crime, the tape is relevant.  See Fed. R. Evid. 401.

9    **N.    THE COURT SHOULD ADMIT IMPEACHMENT EVIDENCE UNDER RULE 609**

10

11    **(1)    October 14, 2003 Conviction For Illegal Re-Entry Under 8 U.S.C. § 1326**

12    Rule 609 provides that evidence that an accused has been convicted of a crime punishable by

13    imprisonment in excess of one year "shall be admitted if the court determines that the probative value

14    of admitting this evidence outweighs its prejudicial value to the accused."   United States v. Martinez-

15    Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004).   Evidence of the conviction is admissible if ten years

16    or less has elapsed since the *later* of:  (1) the date of conviction; or (2) the release of the witness from

17    the confinement imposed for that conviction.  Fed. R. Evid. 609(b).

18    In United States v. Cook, 608 F.2d 1175, 1185 n.8 (9th Cir. 1979) (en banc), overruled on other

19    grounds by Luce v. United States, 469 U.S. 38 (1984), the Ninth Circuit set forth a five-factor test for

20    balancing the relative probativeness and unfair prejudice of a prior conviction. Under this test, this court

21    should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship between

22    the conviction and the defendant's subsequent criminal history; (3) the similarity between the past and

23    the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of the credibility

24    issue. Id.  This court need not analyze each of the five factors explicitly.  United States v. Jimenez, 214

25    F.3d 1095, 1098 (9th Cir. 2000).

26    If Defendant chooses to testify, his credibility will be a central issue in the case and Defendant's

27    character for honesty is a factor that should be carefully weighed by the Court.  The importance of

28    Defendant's testimony is crucial in a case such as this, where Defendant would presumably be called

to testify only if he intended to claim that:  (1) he was involuntarily brought to this country; (2) he did

13

1    not have a conscious desire to enter the United States; (3) he was never actually deported; (4) he was

2    not an illegal alien; or (5) he had received the permission to re-enter the United States, even though DHS

3    has no record of such permission being granted.

4          Should the defendant testify, the Government should be permitted to demonstrate Defendant's

5    lack of trustworthiness by utilizing for impeachment purposes his prior felony conviction for illegal re-

6    entry.  Defendant was released from prison within the past ten years, and the probative value of his

7    conviction is not substantially outweighed by the danger of unfair prejudice.

8          **O.    THE COURT SHOULD ADMIT RULE 404(B) EVIDENCE**

9          Defendant was convicted in the Southern District of California of one count of felony illegal

10   reentry, in violation of 8 U.S.C. § 1326, on or about April 14, 2003.  Evidence of Defendant's prior

11   illegal entry, if not the conviction itself, is admissible pursuant to Rule 404(b) as substantive evidence

12   to show intent, knowledge, and lack of mistake.[3/]  The Government also notes that any plea colloquies

13   from prior immigration convictions are substantive evidence of Defendant's alienage and lack of

14   permission to be in the United States.

15         The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under

16   Rule 404(b). See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998).  The court

17   should consider the following: (1) the evidence of other crimes must tend to prove a material issue in

18   the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must

19   be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time.

20   Id.  In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403

21   balancing test—its probative value must not be substantially outweighed by the danger of unfair

22   prejudice.  See Fed.R.Evid. 403.

23         In United States v. Graham, 575 F.2d 739, 740 (9th Cir. 1978), the defendant was being

24   prosecuted for § 1326 and had previously been convicted of "being illegally in the United States."  The

25   district court admitted a probation officer's testimony that the defendant was the same person that had

26

27         [3/]Defendant was also apprehended on the following dates: June 12, 2003; August 16, 2003; May
28   8, 2007; May 15, 2007; June 17, 2007; July 9, 2007; July 25, 2007; and August 26, 2007.  These
     apprehensions are also admissible pursuant to Rule 404(b) as substantive evidence to show intent,
     knowledge, and lack of mistake.

14

previously been convicted of "being illegally in the United States." Id. The defendant appealed arguing that the probation officer's testimony was not admissible. Id. The Ninth Circuit affirmed, noting that "[t]his appeal approaches the frivolous." Id. Similarly, in United States v. Bejar-Matrecios, 618 F.2d 81, 83-84 (9th Cir. 1980), the district court admitted the defendant's prior § 1325 conviction in his § 1326 prosecution. The Ninth Circuit held that a prior § 1325 conviction is relevant to a § 1326 prosecution. Id. The court noted, however, that admission of the certified copy of the judgment and commitment order was too prejudicial because it was not introduced with a limiting instruction. Id.

Under the test set forth by the Ninth Circuit in Montgomery, Defendant's prior §§ 1325 and 911 convictions should be admitted. First, they tend to prove that Defendant was a previously deported alien and that he was not making a mistake when he entered the United States without consent, facts that Defendant may challenge in this § 1326 prosecution. They also prove that he is an alien and had not reasonable belief that he was actually a United States citizen. Second, Defendant's conviction for illegal entry is equivalent to the crime charged here. Third, the proof of Defendant's prior act will be made by sufficient evidence—certified records of the convictions and/or Defendant's plea agreements in those cases, including the transcripts of his plea colloquies. Fourth, Defendant's convictions occurred within the last ten years. The Government will also seek to avoid the problem noted by the Ninth Circuit in Bejar-Matrecios by requesting a limiting instruction concerning the certified conviction documents.

Finally, with regard to Rule 403, the probative value of the convictions are not substantially outweighed by any prejudicial effect. The probative value of Defendant's illegal re-entry, if not the actual conviction, remains high. The locus of the crime was the Southern District of California—the same place where he was apprehended in the present case. Thus, the conviction demonstrates Defendant's intent, his knowledge concerning his alienage, deported status, and his lack of mistake concerning his being in the United States without permission and lack of mistake as to alienage. The prejudicial effect does not outweigh the probative value because a conviction for an immigration violation is not likely to provoke an emotional response in the jury or otherwise negatively affect the jury's attitude toward Defendant. See United States v. Johnson, 820 F.2d 1065, 1068-70 (9th Cir. 1987) (affirming introduction of plea agreement regarding one bank robbery in later prosecution for another bank robbery).

In sum, introduction of Defendant's prior act of illegal re-entry, if not his conviction under 8 U.S.C. § 1326, is proper under Rule 404(b) because it demonstrates Defendant's intent, knowledge, and lack of mistake concerning the elements of the offense. Accordingly, the Government respectfully requests that evidence of this conviction be admitted pursuant to Rule 404(b), as well as for its impeachment value under Rule 609.

### P.    MOTION FOR FINGERPRINT EXEMPLARS

As part of its case, the United States must prove that Defendant was previously deported from the United States. To prove this element, the United States anticipates calling a certified fingerprint examiner to testify that Defendant is the individual whose fingerprint appears on the warrants of deportation and other deportation documents. A number of chain of custody witnesses could be eliminated, and judicial resources conserved, by permitting the Government's expert to take Defendant's fingerprints himself. The Defendant's fingerprints are not testimonial evidence. See Schmerber v. California, 384 U.S. 757 (1966). Further, using identifying physical characteristics, such as fingerprints, does not violate Defendant's Fifth Amendment rights against self-incrimination. United States v. DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see also, United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987). Accordingly, the Government requests that the Court order that Defendant make himself available for fingerprinting by the Government's fingerprint expert.

### Q.    MOTION FOR RECIPROCAL DISCOVERY

#### 1.    All Evidence for Defendant's Case-in-Chief

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the United States requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to

07CR3103-WQH

introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

### 2.    Reciprocal Jencks – Statements by Defense Witnesses

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant.  The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified.  However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

### III

### CONCLUSION

For the foregoing reasons, the United States respectfully asks that the Court grant the United State's motions.

DATED: February 28, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Eugene S. Litvinoff*
Eugene S. Litvinoff
Assistant United States Attorney

17

07CR3103-WQH

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                         SOUTHERN DISTRICT OF CALIFORNIA
7
    UNITED STATES OF AMERICA,        )          Case No. 07CR3103-WQH
8                                    )
                 Plaintiff,          )
9                                    )
                 v.                  )
10                                   )          CERTIFICATE OF SERVICE
    ANTONIO REZA-LARA,               )
11        aka Gabriel Angel          )
              Hernandez-Contreras,   )
12               Defendant.          )
    _____)
13
14   IT IS HEREBY CERTIFIED THAT:
15          I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen years of
16   age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.
17          I have caused service of **UNITED STATES' MOTIONS <u>IN LIMINE</u>** on the following parties
18   by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which
     electronically notifies them.
19          **1.      Benjamin Lechman, Esq.**
20          I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
21   Service, to the following non-ECF participants on this case:
22          N/A
23   the last known address, at which place there is delivery service of mail from the United States Postal
24   Service.
25          I declare under penalty of perjury that the foregoing is true and correct.
26          Executed on February 28, 2008.
27                                       /s/ *Eugene S. Litvinoff*
                                         EUGENE S. LITVINOFF
28                                       Assistant U.S. Attorney

                                         18                              07CR3103-WQH